# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 10-20636-CIV-ALTONAGA/Brown

JPMCC 2005-CIBC13 COLLINS
LODGING, LLC, a Florida limited
liability company,

               Plaintiff,

   vs.

PHILIPS SOUTH BEACH, LLC,
a Delaware limited liability
company,

               Defendant.

_____/

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
## DUE TO LACK OF SUBJECT MATTER JURISDICTION

**LAZER, APTHEKER, ROSELLA & YEDID, P.C.**
*Attorneys for Defendant*
**ATTORNEYS AT LAW**
**BANK OF AMERICA BUILDING**
**2000 GLADES ROAD, SUITE 110**
**BOCA RATON, FLORIDA 33431**
**(561) 416-8448**

Defendant, Philips South Beach, LLC ("Defendant"), by and through counsel, submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss Due to Lack of Subject Matter Jurisdiction.

## PRELIMINARY STATEMENT

In its original motion papers, Defendant demonstrated that the Amended Complaint should be dismissed because the beneficiaries of the Trust that plaintiff JPMCC 2005-CIBC13 Collins Lodging, LLC ("Plaintiff") contends is its sole member[1] are not diverse from the members of Defendant.[2] In opposition, Plaintiff offers no evidence to dispute this lack of diversity. Instead, it asks this Court to do what every other court, including the Supreme Court and the Eleventh Circuit Court of Appeals, has refused to do; engage in judicial legislation by holding that a "REMIC trust" should be treated differently for diversity purposes from *all other unincorporated entities*. Every court presented with the very arguments that Plaintiff urges upon this Court has held that drawing such distinctions between different kinds of unincorporated entities for diversity purposes is solely within the province of the legislature. Yet Plaintiff, citing no relevant authority, urges the Court to expand its jurisdiction to entertain Plaintiff's claims, without inquiring as to the citizenship of each of the Trust's beneficiaries. The Court should not grant Plaintiff's request to judicially legislate an expansion of diversity jurisdiction.

Plaintiff's argument to expand diversity jurisdiction is wholly based on its claim that a trust receiving REMIC tax treatment "is solely a creature of federal law". No case or statute is cited for that proposition for a simple reason. It is not true.

---

[1] Contrary to Plaintiff's representations, Defendant does not agree or concede that the Trust is Plaintiff's sole member. In fact, Defendant specifically challenges Plaintiff's claim that NYLIM transferred its $11,500,000.00 note to Plaintiff "to facilitate the foreclosure action hereunder", but retained no membership interest in Plaintiff. [D.E. 1 at ¶ 20]. However, as there is no diversity between the beneficiaries of the Trust and Defendant's members, it is unnecessary for the Court to reach the issue of whether the Trust is truly Plaintiff's sole member at this time.

[2] Submitted herewith, in addition to the four affidavits submitted with the renewed motion to dismiss, are the sworn statements by Trust certificateholders New York Life Insurance Company, New York Life Insurance and Annuity Corporation, and Allianz Life Insurance Company of New York, which further demonstrate the lack of complete diversity in this case because both the Trust, by virtue of its beneficiary certificateholders, and the Defendant are citizens of both New York and Delaware. These additional sworn statements were provided to Defendant after Defendant filed its original motion papers.

As Plaintiff has failed to submit *any evidence* demonstrating that all of the Trust's beneficiaries are diverse from all of Defendant's members, much less the "proof definitively evincing diversity exists" referenced in the Court's July 2, 2010 order, the Court should dismiss this action.

## POINT I

### FOR DIVERSITY PURPOSES, THE COURT MUST CONSIDER ALL OF THE MEMBERS OF ANY UNINCORPORATED ENTITY, INCLUDING TRUSTS

The relevant law in this area was summarized only a few days ago by the Eleventh Circuit in Underwriters at Lloyd's, London v. Carol Osting-Schwinn. There, the court held:

> For well over a century, federal law has drawn a sharp distinction between corporations and virtually every other form of association for purposes of determining diversity of citizenship. On the one hand, corporations are considered legal persons whose citizenship does not depend on that of their shareholders . . . On the other hand, unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332. Furthermore, no matter the particular features of an unincorporated entity, it has long been the tradition of the common law to treat as legal persons only incorporated groups and to assimilate all others to partnerships, which must plead the citizenship of each member.

> The Supreme Court reaffirmed this categorical approach in Carden v. Arkoma Associates, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) a diversity suit brought by an Arizona limited partnership against two Louisiana citizens . . . The Supreme Court . . .

> > rejected the contention that to determine, for diversity purposes, the citizenship of an artificial entity other than a corporation, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members

> In support of its holding, the Court reviewed a long line of cases establishing the principle upon which it relied . . . the Supreme Court characterized the decision of how to treat unincorporated associations as primarily legislative in nature.

2010 U.S.App.LEXIS 16746 (11th Cir. August 5, 2010) (citations and quotations omitted).

2

Notwithstanding this binding precedent, Plaintiff urges the Court to carve-out an exception to the bright-line rule differentiating corporations from all unincorporated entities for diversity purposes. In fact, Plaintiff argues that "REMIC trusts" are analogous to corporations, and should be treated like corporations for purposes of the diversity analysis. [See D.E. 58 at pp. 8-9]. Every court that has heard the arguments proffered by Plaintiff has outright rejected them and refused to judicially legislate different diversity treatment for specific types of unincorporated entities.

For example, in United Steel Workers of America, AFL-CIO v. R.H. Bouligny, Inc., the Supreme Court rejected an argument that citizenship of an unincorporated labor union should be determined based upon the citizenship of less than all of the union's members. In reaching its conclusion, the court held that while there was "considerable merit, that it is not good judicial administration, nor is it fair, to remit a labor union or other unincorporated association to vagaries of jurisdiction determined by the citizenship of its members . . . We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts." 383 U.S. 145, 150-51, 86 S. Ct. 272, 15 L. Ed. 217, 220 (1965).

Similarly, in Swiger v. Allegheney Energy, Inc., the Third Circuit Court refused to find an exception to the Carden rule where one of several hundred partners in the defendant law firm Morgan, Lewis & Bockius, LLP was an American citizen domiciled abroad, thus constituting a "stateless person". In his concurring opinion, Judge McKee joined in the court's holding that even a single "stateless" partner precluded the firm from suing or being sued in federal court based on diversity jurisdiction, and noted that:

> [u]nless Congress takes up the problem and clarifies the meaning of 28 U.S.C. § 1332(a), persons suing large partnerships will increasingly be barred from bringing their claims in federal court. Hopefully, Congress will address this situation and put the Carden genie back in its jurisdictional bottle. However, that day is not yet here, and I therefore concur in this judgment.

3

540 F.3d 179, 189-190 (3d Cir. 2008)

In Hoagland v. Sandberg, Pheonix & Von Gontard, P.C., the Seventh Circuit also refused to depart from the Carden bright-line incorporated/unincorporated rule, and summarized the law as follows:

> The only situation in which a simple reference to state law will fail to resolve the issue of a party's citizenship is where the party is foreign, for it is then necessary to determine whether the characteristics of the foreign entity are enough like those of a U.S. corporation to make "corporation" the correct translation into English. Carden describes this as "the one exception to the admirable consistency of our jurisprudence in this matter." Cases involving U.S. entities are indeed consistent – in treating the state's label as determinative.

385 F.3d 737, 743 (7th Cir. 2004) (citations omitted).

Following this line of precedent, in Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., the Eleventh Circuit held that, in determining the citizenship of a limited liability company, a court must look to the citizenship of each of the company's members. The Court noted that the Carden court "reasoned that Congress, if it so chooses, is capable of adjusting the rules of diversity jurisdiction to account for unincorporated associations" and held "that the general rule for unincorporated entities also applies to limited liability companies, in the absence of Congress' extending the treatment given to corporations". 374 F.3d 1020, 1021-22 (11th Cir. 2004).

Most recently, in Underwriters at Lloyd's London, the Eleventh Circuit followed Carden. There, the Court rejected Plaintiff's argument here, that because a trust "can consist of [tens of] thousands of certificate holders – whose citizenship is wide-spread and constantly evolving – to adopt a jurisdictional rule focused on the citizenship of the certificateholders would divest federal courts of all jurisdiction over [such] trusts ...". [See D.E. 58 at p. 10]. In Lloyd's the District Court adopted the argument urged by Plaintiff, and "described Lloyd's as consisting of over 400 separate syndicates and over 30,000 members,' and reasoned that disclosing the citizenship of 'all underwriters at Lloyd's' would be 'unwieldy' [and] . . . would prevent Lloyd's from vindicating its rights in federal court". 2010 U.S.App.LEXIS 16746 at *11.

Reversing, the Eleventh Circuit held, *inter alia*, that "[t]he rule of Carden, however, is 'technical precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization,' and does not admit of exceptions based on convenience or practicality." Id. at *29.

The Eleventh Circuit joined every other court that has ruled on the issue, holding there is no exception to the Carden rule for unincorporated entities with thousands of members, even where such membership is publically traded and difficult, if not impossible, to trace.  See e.g. Moran v. Gulf South Pipeline Co., 2007 WL 276196, *1 (W.D. La. Jan 25, 2007); Watkins v. Terminix International Co., 976 F.Supp. 1397 (D. Kan. 1997); Magnolia Management Corp. v. Quest Rescue Partners-8 L.P., 792 F. Supp. 45 (S.D. Miss. 1992).

It is not surprising that Plaintiff fails to cite any authority for its argument that the Court should carve-out an exception to the Carden rule for so-called "REMIC trusts".  Plaintiff's argument flies in the face of long-binding precedent mandating that such an exception can only be created by Congress, not courts.  The Court should therefore reject Plaintiff's request that it usurp Congressional lawmaking authority and expand its jurisdiction to entertain this action.

## POINT II

## THE TAX TREATEMENT OF A TRUST IS IRRELEVANT TO DIVERSITY

Plaintiff's arguments that "REMIC trusts" should be treated differently from other trusts, and indeed all other unincorporated entities, for diversity purposes are contrary to established law, and should be rejected.

While acknowledging that the standard for determining the members of a trust for diversity purposes was settled in this Circuit by Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334 (11th Cir. 2002), Plaintiff urges the adoption of an untenably narrow reading of that case.  In a transparent effort to evade the holding of Riley, Plaintiff misrepresents that the Riley holding is limited to "determining the citizenship of *a Massachusetts state law business trusts*" [sic].  [See D.E. 58 at p. 16].

5

<u>Riley</u> made clear that its decision was not so limited, but was based on the <u>Carden</u> incorporated/unincorporated rule. See 292 F.3d 1334, 1339 (11th Cir. 2002).

Moreover, in <u>Emerald Investors Trust v. Gaunt Parsippany Partners</u>, cited as authority by Plaintiff, the court noted that "[o]ur research, however, has not led us to conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship for diversity of citizenship jurisdictional purposes". 492 F.3d 192, 199 (3d Cir. 2007); <u>see also</u> <u>Hoagland</u>, 385 F.3d at 739 (noting earlier holding that "for purposes of diversity jurisdiction a corporation is a corporation is a corporation").

Consistent with the breadth of <u>Riley</u>, courts within the Eleventh Circuit have applied <u>Riley</u> to trusts other than state law business trusts. See e.g. <u>Landstar Global Logistics, Inc. v. Total Transp. Serv., LLC</u>, 2009 WL 997222, *2 (M.D. Fla. April 14, 2009) (requiring identification of all beneficiaries of trust members of defendant LLC, which included a living trust and an irrevocable trust). Thus, Plaintiff's assertion that <u>Riley</u> is not controlling here is without merit.

Equally without merit is Plaintiff's argument that, for diversity purposes, a "REMIC trust" should be treated differently from all other trusts. Notwithstanding Plaintiff's discussion of "What is a REMIC Trust and How Does it Function", its argument for different diversity treatment for "REMIC trusts" demonstrates a misunderstanding of the nature of the state common law trusts that qualify for, and elect treatment under, the REMIC provisions of the Internal Revenue Code ("Tax Code").

Plaintiff's repeated argument that a trust formed under state law that elects to receive the tax treatment of a "real estate mortgage investment conduit" or "REMIC" is "a creature of federal law", "*solely* a vehicle of federal law", "created by operation of federal law", "not organized under state law", "authorized **solely** by operation of federal tax law", "authorized **solely** by federal law", "a uniquely federal legal entity", and "exists **solely** as a result of the existence of federal legislative and executive action", is entirely erroneous, and no matter how many times plaintiff repeats, bolds, italicizes, or otherwise emphasizes such erroneous claim, it does not make it true or render it supported by any

6

authority.  [D.E. 58 pp.3, 7, 8, 10, 17, 18].

Initially, there is no such thing as a "REMIC trust".  An entity need not even be a trust to elect "REMIC" treatment under the Tax Code, but can be any qualified "entity" that makes the election on its federal tax return to receive "REMIC" tax treatment.  See 26 U.S.C. § 860D(a)(1).  I.R.S. form 1066, which an entity must submit to receive REMIC treatment, inquires as to "[w]hat type of entity is this REMIC", with the options including corporation, partnership, trust, or segregated pool of assets. See Ex. "A"[3] at p. 4, Item E.  By Plaintiff's reasoning, if a trust, formed under state law, qualifies for and elects to receive REMIC treatment in one tax year, but does not qualify and subsequently loses its REMIC treatment in a subsequent year, its "citizenship" for diversity purposes will also change from year to year.  Nothing in the Tax Code, or elsewhere, supports such an illogical result.

Equally without merit is Plaintiff's claim that a "REMIC trust" is created or authorized by federal law.  A REMIC entity is formed pursuant to state law and merely elects REMIC tax treatment.  Both federal tax law and the instructions for completing I.R.S. form 1066 make clear that the filing party is to identify the type of REMIC entity by its formation and status under state law.  See 26 C.F.R. 1.860D-1(d)(2)(iv) (requiring identification of  "[t]he form of the electing qualified entity *under State law* ..." (emphasis added); Ex "B" ("**Item E – Type of entity.**  Check the box for the entity type of the REMIC *recognized under state or local law* ..."(emphasis added)).

Contrary to Plaintiff's contention, entities are not created under federal tax laws.  Rather, they are created according to state laws, and the Tax Code merely provides the tax regimens to which such entities are subject (or exempt).  See Estate of Vissering, 990 F.2d 578, 580 (10th Cir. 1993) ("We look to state law [here Florida's] to determine the legal interests and rights created by a trust instrument, but federal law determines the tax consequences of those interests and rights").

While Plaintiff claims its sole member is a "REMIC trust" formed under federal law with a

---

[3] References to "Ex." are to the exhibits annexed to the accompanying declaration of Russell L. Penzer.

"federal charter", Plaintiff fails to provide citation to any federal statutory provision authorizing the formation of such a federally "chartered" entity and Plaintiff has not produced Trust documents for the Court's and Defendant's consideration. The reason for this omission is clear: Plaintiff's member, as with all REMICs, was formed pursuant to state law, and merely has (allegedly) elected REMIC tax treatment on its tax return.

Courts have explicitly rejected litigants' attempts to classify themselves for diversity purposes based upon their tax treatment. For example, in <u>Taber Partners I v. Insurance Co. of North America, Inc.,</u> the court rejected a claim that because some of the parties' members were "subchapter S corporations", they should be treated differently from other corporations for diversity purposes, holding:

> there are no such creatures as "subchapter S corporations." Instead, there are only corporations which have made an *election* under subchapter S of the Internal Revenue Code to receive certain tax treatments ... The [parties'] purpose in structuring its business using these entities was to avail itself of tax and liability advantages provided for by law - - not to manipulate citizenship for purposes of diversity jurisdiction.

798 F.Supp. 904, 910 (D. P.R. 1992); <u>see also</u> <u>Long v. Long</u>, 509 F.Supp.2d 568, 571 (N.D.W.Va. 2007) ("An election under subchapter S of the Internal Revenue Code only affects a corporation's and its shareholders' tax liability; it does not affect a determination of citizenship for the purposes of diversity jurisdiction"). Likewise, the election by a state law trust to be treated under the REMIC provisions is irrelevant for the purposes of diversity jurisdiction.

Most fatal to Plaintiff's claim is how courts have treated real estate investment trusts, or "REITs", for diversity purposes. A REIT, like a REMIC, is an investment vehicle which holds interests in real estate. <u>See</u> 26 U.S.C. 856; <u>Lincoln Assocs. Inc. v. Great American Mortgage Investors,</u> 415 F.Supp. 351, 353 (N.D. Tex. 1976). Like entities electing REMIC tax treatment, beneficial ownership in REITs "is evidenced by transferable shares, or by transferable certificates of beneficial interest". <u>See</u> 26 U.S.C. 865 (a)(2). Also like entities receiving REMIC tax treatment, qualified entities formed under state law make an election on their federal returns to receive REIT tax treatment. <u>See</u> 26 U.S.C. 865(c)(1). Shares in

8

REITs can be publically traded. <u>Lincoln Assocs., Inc.</u>, 415 F.Supp. at 353. Also, a beneficiary certificateholder or shareholder in a REIT does not have any ownership or possessory interest in any of the individual real estate holdings of the REIT, only a beneficial ownership interest documented by shares or certificates, a factor that Plaintiff claims is both "significant[]" and "most important[]" with respect to its analysis of "REMIC trusts". [See D.E. 58 at p. 9].[4]

Thus, according to Plaintiff, REITs would be "creatures" of federal law, and warrant the diversity treatment that Plaintiff urges the Court afford entities receiving REMIC tax treatment. Yet every decision that we have been able to locate addressing the issue has held that unincorporated REITs are to be treated as other unincorporated associations for diversity, and the court must consider the citizenship of all REIT shareholders or certificateholders.[5]

Finally, the three out-of-circuit trial court decisions cited by Plaintiff as support for its position that "REMIC trusts" are to be treated differently for diversity purposes than all other trusts are inapposite. <u>LaSalle Bank National Assoc. v. Nomura Asset Capital Corp.</u>, 180 F.Supp.2d 465 (S.D.N.Y. 2001) and <u>Wells Fargo Bank, N.A. v. Konover</u>, 2009 WL 2710229 (D. Conn. Aug. 21, 2009) look to the citizenship of the trust's trustee[s] for diversity purposes rather than the citizenship of the beneficiaries.[6] But those District Court cases are from the Second Circuit, where the Court of Appeals has not ruled on the issue. Here, in sharp contrast, the Eleventh Circuit has held that courts are to look to the beneficiaries of the trust as the trust's members for diversity purposes. <u>See Riley supra</u>. While one could argue to a court sitting in the Second Circuit that a beneficiary of a trust may not destroy diversity, there is no authority in either circuit to support Plaintiff's novel proposition that a "REMIC trust" is to be treated differently from other

---

[4] In fact, one leading authority in the area provides that, where an entity receiving REMIC tax treatment is a trust, it is a type of REIT. <u>See</u> John W. Reilly, <u>The Language of Real Estate</u> 328-29 (5th ed. 2000).

[5] See <u>e.g.</u> <u>Belle View Apartments v. Realty ReFund Trust</u>, 602 F.2d 668 (4th Cir. 1979); <u>Starwood Ceruzzi LLC v. Inland Real Estate Acquisitions, Inc.</u>, 2009 U.S.Dist.LEXIS 81075 (D.N.J. Sept. 8, 2009); <u>Independence Mortgage Trust v. White</u>, 446 F.Supp. 120 (D. Or. 1978); <u>Riverside Memorial Mausoleum, Inc. v. UMET Trust</u>, 434 F.Supp. 58 (E.D. Pa. 1977, aff'd on this issue, 581 F.2d 62 (3d Cir. 1978); <u>Lincoln Assocs., Inc.</u>, 415 F.Supp. 351.

[6] Even in those cases, the respective courts did not distinguish between a so called "REMIC trust" and other trusts. Rather, the respective rulings applied to all trusts, which is not the law in this Circuit. <u>See Riley, supra</u>.

9

trusts for diversity purposes.

Additionally, in each of the cases relied upon by Plaintiff, the trustee brought suit in its own name, LaSalle Bank National Association and Wells Fargo Bank N.A., respectively, unlike here, where the Trust is not a party, but merely a member of the Plaintiff LLC.  Even if these decisions were of any relevance here, this distinction is important because they are premised on the Supreme Court's holding in Navarro Savings Bank Ass'n v. Lee, 446 U.S. 468, 100 S.Ct. 1779 (1980).  In Carden, however, the Supreme Court made clear that "Navarro has nothing to do with the citizenship of a 'trust,' since it was a suit by the trustees *in their own names*".  495 U.S. at 192-93 (emphasis added).  That is why Plaintiff's reliance upon both LaSalle Bank National Assoc. v. Lehman Bros. Holdings, Inc., 237 F.Supp.2d 618 (D. Md. 2002) and the Bankruptcy Court decision in In re Rosenberg, 414 B.R. 826 (Bankr.S.D.Fla. 2009) is misplaced.  In both cases, the issue was who the "real party in interest" was, a determination informed by the Navarro decision, and having nothing to do with diversity.  See Underwriters at Lloyd's, London, 2010 U.S.App.LEXIS 16746 at n. 5.

That trusts receiving REMIC tax treatment are like other trusts for diversity purposes is confirmed by Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co..  There, as here, the trust was the "Issuing Trust" of a mortgage backed securities pool.  In holding that it lacked diversity jurisdiction, the court applied the standards applicable to trusts generally by courts within the Third Circuit, and thus, looked to the citizenship of both the trustees and all of the beneficiaries of the trust.  See 652 F. Supp.2d 576, 587 (E.D. Pa. 2009).

Plaintiff's claim that for diversity purposes trusts electing REMIC tax treatment by the I.R.S. should be treated differently from all other trusts, and all other unincorporated entities, is entirely without merit.

## **CONCLUSION**

Defendant respectfully requests that this Court enter an Order dismissing this action in its entirety, and granting such other relief as the Court deems just, proper and necessary.

Respectfully submitted,

By:   _/s/_ _____
      Russell L. Penzer, Esq.,
      *Admitted Pro Hac Vice*
      LAZER, APTHEKER, ROSELLA
         & YEDID, P.C.
      2000 Glades Road, Suite 110
      Boca Raton, FL  33431
      Telephone: (561) 416-844
      Facsimile: (561) 416-8499
      penzer@larypc.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 27, 2010, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on Victor M. Diaz, Jr., Esq., Podhurst Orseck, P.A., 25 W. Flagler Street, Suite 900, Miami, Florida 33130, counsel for plaintiff, *via* transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/_____

Giuseppe Franzella, Esq.
Fla. Bar No.: 60332